# In the United States Court of Federal Claims

No. 20-520C

(Filed: August 25, 2020)

```
*************************************  *
LEWIS B. JONES,                        *
                                       *
           Plaintiff,                  *
                                       *   Military Disability Retirement Pay Claim,
                                       *   10 U.S.C. § 1201 (2018); Statute of
     v.                                *   Limitations, 28 U.S.C. § 2501 (2018);
                                       *   RCFC 12(b)(1); Informal Physical
THE UNITED STATES,                     *   Evaluation Board; Claim Accrued at Time
                                       *   of Discharge from the Military
           Defendant.                  *
*************************************  *
```

Lewis B. Jones, Kansas City, MO, pro se.

James W. Poirier, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Chief Judge

    Plaintiff Lewis B. Jones, proceeding pro se, was separated from the United States Air Force ("Air Force") with disability severance pay in 1988 after honorably serving his country for approximately eight years. He contends that the Air Force should have retired him for disability reasons instead and seeks disability retirement pay and benefits dating back to his discharge date. Defendant moves to dismiss Mr. Jones's complaint as barred by this court's statute of limitations. For the reasons set forth below, the court grants defendant's motion and dismisses the amended complaint for lack of jurisdiction.

**I. BACKGROUND**

    Mr. Jones entered active duty service in the Air Force on January 29, 1981.[1] While serving in Germany in 1982, he was struck in the eye by the door of an armored personnel carrier. As his service continued, the eye injury caused a number of sequelae, including intense headaches. Mr. Jones struggled to find relief from the pain through a variety of prescribed medications and also through alcohol use. In 1986, he had a consultation for alcohol abuse. He

---

[1] The court derives all background information from plaintiff's amended complaint that includes a number of supporting documents. Page references are provided by the court's electronic filing system.

eventually changed jobs from security policeman to recreation supervisor and was serving in the Philippines when his health problems led to an evaluation of his fitness for continued duty.

The primary contemporaneous documents supplied by Mr. Jones that address his medical evaluation in late 1988 include: (1) a "Narrative Summary (Clinical Resume)" of consultations with specialists in neurology, psychiatry, psychology, and ophthalmology at a medical center at Travis Air Force Base in California, dated October 31, 1988; (2) a Medical Evaluation Board ("MEB") report dated November 18, 1988; (3) two statements from Mr. Jones responding to the MEB report, dated November 22, 1988; and (4) a report from an Informal Physical Evaluation Board ("IPEB"), dated December 6, 1988, which was convened upon the recommendation of the MEB.[2]  Am. Compl. 24-29.  The IPEB recommended discharge with severance pay based on a 10% disability rating for "Post traumatic pain syndrome manifest[ing] as headaches."  Id. at 26.

After Mr. Jones agreed with the IPEB's recommendation he was honorably discharged on December 29, 1988, and received an $18,000 severance payment, less taxes.  His discharge was amended in 1989 to reflect the fact that his injury was combat-related.

Mr. Jones alleges that a number of his health conditions can be traced to his eye injury and that these related problems should have been discerned at the time of his separation. Specifically, he contends: "[Traumatic Brain Injury ("TBI")] occurred June 8, 1982 and after six years of TBI deteriorations and its mental disorders effects, the Plaintiff was discharged December 29, 1988 after experiencing subsequent psychiatric illnesses such as post-traumatic stress disorder [("PTSD")] manifested as fear of doors phobia, anxiety, depression, alcohol and narcotics disorder, cognitive deficits and sleeping problems."  Id. at 9.  Although no precise chronology of Mr. Jones's health problems is before the court, the Department of Veterans Affairs ("VA") record included with the complaint shows that Mr. Jones was repeatedly evaluated by the VA over the last fifteen years, with various disability ratings or denials of disability claims provided in 2006, 2009, 2013, 2015, 2017, and 2018.  Effective December 8, 2017, the VA increased Mr. Jones's rating to 100% disabled.  This disability rating by the VA is based on previous VA disability ratings that slowly grew from a 10% disability rating at the time of discharge, attributed to migraine headaches, to a 50% disability rating as of 2005, also attributed to headaches, and higher ratings starting in 2012 based on a combination of conditions such as headaches, PTSD, TBI, and a number of other limitations either physical or mental in nature.

Once Mr. Jones received the 100% disability rating from the VA, he petitioned the Air Force Board for Correction of Military Records ("AFBCMR") for changes to his record that would entitle him to a disability retirement dating back to 1988.  His petition is dated February

---

[2] Generally speaking, an MEB evaluates whether a service member meets retention standards and, if not, refers the service member to an IPEB or formal Physical Evaluation Board ("PEB").  Chambers v. United States, 417 F.3d 1218, 1225 & n.2 (Fed. Cir. 2005).  The IPEB or PEB then reviews the service member's fitness for duty and any entitlement to a disability retirement.  Id.

26, 2018. As part of the AFBCMR proceedings, he received memoranda indicating the Air Force's disagreement with his petition; he later amended his claim on October 16, 2019. Mr. Jones's request for correction of his military records to show that he should be paid disability retirement benefits was denied by the AFBCMR on or after January 7, 2020.

Mr. Jones now seeks review of the AFBCMR's decision. His original complaint was filed on April 23, 2020, followed by an amended complaint filed on July 1, 2020. Defendant filed a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), alleging that the court lacks jurisdiction to entertain Mr. Jones's claim because it is barred by this court's six-year statute of limitations, 28 U.S.C. § 2501 (2018). Plaintiff responded to the motion with a document titled "Motion to Strike Defense's Motion," which was docketed as plaintiff's response brief. Once defendant filed its reply brief, the motion to dismiss was ripe and the court deemed oral argument unnecessary.

## II. DISCUSSION

### A. Standard of Review

When considering whether to dismiss a complaint for lack of jurisdiction pursuant to RCFC 12(b)(1), the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, plaintiffs proceeding pro se are not excused from meeting basic jurisdictional requirements, Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995), even though the court holds their complaints to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520-21 (1972). In other words, a plaintiff proceeding pro se must prove, by a preponderance of the evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Trusted Integration, 659 F.3d at 1163. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### B. Jurisdiction

Whether the court has subject matter jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the existence of subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1).  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976).  Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States."  Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).  Further, to fall within the jurisdiction of the Court of Federal Claims, any claim against the United States filed in the court must be "filed within six years after such claim first accrues."  28 U.S.C. § 2501; see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008) (providing that the limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a claim).

In his complaint, Mr. Jones claims entitlement to disability retirement pay and benefits pursuant to 10 U.S.C. § 1201 (2018).  There is no dispute that 10 U.S.C. § 1201 is a money-mandating statute.  See Fisher v. United States, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005) (panel portion).  Although Mr. Jones also references a variety of other authorities, his citation to 10 U.S.C. § 1201 is sufficient to establish this court's jurisdiction over his claim for disability retirement pay and benefits if that claim is not time-barred.

### C. Plaintiff's Claim for Disability Retirement Pay and Benefits Is Barred by the Statute of Limitations

"A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'"  Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)).  To determine whether Mr. Jones's claim was filed "within six years after such claim first accrue[d]," 28 U.S.C. § 2501, this court is guided by well-established precedent on the topic of the accrual of claims for military disability retirement pay and benefits.

The United States Court of Appeals for the Federal Circuit has succinctly summarized the rule for determining when a claim for disability retirement pay and benefits accrues:

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it.  The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event.  If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge.  A subsequent petition to

> the corrections board does not toll the running of the limitations period; nor does a new claim accrue upon denial of the petition by the corrections board.

Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing Friedman v. United States, 310 F.2d 381, 390, 396-98 (Ct. Cl. 1962)); accord Chambers, 417 F.3d at 1221, 1224-25, 1227; Martinez, 333 F.3d at 1311-15. Statutorily authorized military boards whose decisions are sufficient to trigger the running of the six-year limitations period include IPEBs and PEBs. Chambers, 417 F.3d at 1225 & n.2; Schmidt v. United States, 89 Fed. Cl. 111, 120 (2009) ("An 'informal' [Central Physical Evaluation Board] decision is sufficient to start the running of the statute of limitations.").

In this case, an IPEB was convened to consider Mr. Jones's fitness for duty, and it ultimately determined—in December 1988—that Mr. Jones should be separated, and not retired, due to his disabling trauma manifesting as headaches. Thus, Mr. Jones's claim for disability retirement pay and benefits accrued on the date of his discharge—December 29, 1988. See, e.g., Garcia-Gines v. United States, 131 Fed. Cl. 689, 701 (2017) (holding that the decision of an IPEB triggered the accrual of a disability retirement claim at the time the service member was discharged, because the service member accepted the IPEB's decision and was discharged with severance pay instead of receiving a disability retirement). This accrual date, moreover, is not affected by Mr. Jones's subsequent application to the AFBCMR in 2018 for disability retirement pay and benefits or by the AFBCMR's denial or rejection of that application because that action does not toll the statute of limitations. E.g., Real, 906 F.2d at 1560. In short, because Mr. Jones did not file suit in this court within six years of his separation from the Air Force in 1988, but instead filed suit more than thirty years later, his claim for disability retirement pay and benefits is barred by 28 U.S.C. § 2501.

### D. There Are No Facts or Arguments that Overcome the Statute of Limitations Bar

Because Mr. Jones is proceeding pro se and is battling a number of serious health conditions, the court examined his amended complaint and response brief thoroughly in an attempt to identify any relevant facts or legal theories that might overcome the statute of limitations that bars his suit. Only two areas of inquiry were suggested by this review, and the parties have focused their arguments in these two areas.[3] First, the court considers whether Mr. Jones's disabling conditions were essentially unknowable at the time of his discharge so that the accrual date of his claim was suspended until he learned more about his conditions. Second, the court discusses the policy documents issued by the Air Force or some other authority within the

---

[3] The court also considered whether statutory tolling, pursuant to 28 U.S.C. § 2501 and its "legal disability" provision, could assist Mr. Jones. No reasonable construction of the amended complaint and Mr. Jones's response brief could support statutory tolling under this provision. His claims for VA benefits, for example, which were presented to the VA as early as 2006 and consistently through 2018, show that his capacity for "transacting business" was not impaired to the extent and for the number of years that could establish statutory tolling due to legal disability. Goewey v. United States, 612 F.2d 539, 544 (Ct. Cl. 1979).

United States Department of Defense ("Defense Department") that, according to Mr. Jones, should govern the question of whether his claim is timely. Unfortunately for Mr. Jones, neither of these areas of inquiry permits the court to consider his time-barred claim.

### E. The Accrual Suspension Rule Does Not Apply in This Case

Claims against the United States are subject to the doctrine of accrual suspension, which directs "that the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." Martinez, 333 F.3d at 1319. The accrual suspension rule, however, is "strictly and narrowly applied," Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir. 1985), and "it is not necessary that the plaintiff obtain a complete understanding of all the facts before the tolling ceases and the statute begins to run," Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (citing Japanese War Notes Claimants Ass'n of the Phil., Inc. v. United States, 373 F.2d 356, 359 (Ct. Cl. 1967)). To take advantage of the accrual suspension rule for his disability retirement claim, Mr. Jones must show that his "injury was 'inherently unknowable' at the accrual date."[4] Japanese War Notes Claimants Ass'n, 373 F.2d at 359 (quoting Urie v. Thompson, 337 U.S. 163, 169 (1949)). The facts of this case do not show that Mr. Jones's disabling health problems were inherently unknowable in 1988.

The amended complaint establishes a record of Mr. Jones's knowledge of his various health conditions in the months leading up to his discharge. The contemporaneous documents provided by Mr. Jones show that he received neurologic, psychiatric, and psychological consultations in 1988; that his headaches were increasing in frequency and were incapacitating; that he felt psychologically deformed; that he was impatient, irritable, and had no tolerance for stress or anxiety; that he had been prescribed a number of pain-killers but these were largely ineffective; and that he sometimes used alcohol for pain relief. These documents also indicate that the Air Force medical staff believed there was a psychological component to his health problems but did not feel he suffered from a psychiatric disorder that should be treated with narcotics. In addition, Mr. Jones told the Air Force in 1988 that he believed his injury, which required that he avoid stressful situations, would hinder civilian employment after he left the Air Force.

In short, the record before the court reflects that while Mr. Jones may not have had a full understanding of all of his health problems in 1988, he was aware of the evaluation of those health issues by the MEB and the IPEB. He was also aware that his serious health problems

---

[4] The other type of accrual suspension scenario is where the facts of the claim were concealed by the defendant. Japanese War Notes Claimants Ass'n, 373 F.2d at 359. That scenario is not present here. The MEB and IPEB proceedings, rather than concealing relevant facts, confronted Mr. Jones with the topic of disabling health conditions. See, e.g., Joppy v. United States, 123 Fed. Cl. 701, 706 (2015) (finding that claim accrual should not be suspended where the service member knew of the facts that would support his claim at the time of discharge), aff'd, 646 F. App'x 998 (Fed. Cir. 2016).

were deemed to be only 10% disabling in 1988, which determination was insufficient for the Air Force to provide him with disability retirement pay and benefits. These facts establish that Mr. Jones's disability retirement claim was not inherently unknowable in 1988 and that the accrual suspension rule does not apply in this case. See, e.g., Malcolm v. United States, No. 16-545C, 2017 WL 105946, at *5 (Fed. Cl. Jan. 11, 2017) (finding that the accrual suspension rule could not apply where the service member "knew of his impaired mental condition and its effects on his behavior at the time of his discharge"), aff'd, 690 F. App'x 687 (Fed. Cir. 2017); Dubsky v. United States, 98 Fed. Cl. 703, 709 (2011) (citing Young v. United States, 529 F.3d 1380, 1385 (Fed. Cir. 2008); Catawba Indian Tribe v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993)) (declining to apply the accrual suspension rule because, at the time of his discharge, the plaintiff "possessed the factual information required to bring his claim in this Court, even if he lacked the awareness of his legal right to do so").

In his response brief, Mr. Jones argues that the health conditions that underly his 100% disability rating from the VA are "newly discovered with corrected diagnosis," and appears to suggest that the IPEB's discharge decision in 1988 was founded on either a failure to uncover the symptoms of his TBI, PTSD, and other mental health problems, or a misdiagnosis of those health problems. Pl.'s Resp. 2. For the accrual suspension rule to be applied by this court, however, it is not enough to show an error on the part of an IPEB. The service member must show, instead, that his disabling health problems were unknowable at the time of discharge. See, e.g., Young, 529 F.3d at 1384-85 (agreeing with the trial court that accrual of a military pay claim should not be suspended where the service member's medical condition was not unknowable before his discharge, notwithstanding the fact that examinations by the VA in later years provided more information about his condition). In this case, the record shows that Mr. Jones recognized the disabling nature of his health problems in 1988; thus, his claim accrued in 1988 when he was discharged with severance pay rather than with disability retirement pay and benefits.

### F.  Defense Department Policies Do Not Waive This Court's Statute of Limitations

In addition to invoking accrual suspension principles to avoid a statute-of-limitations dismissal, Mr. Jones argues that Defense Department policies render his claim timely. Mr. Jones references three documents disseminated by the Defense Department in his amended complaint. The first is Inspector General Complaints Resolution, Air Force Instruction 90-301 (Dec. 28, 2018). Am. Compl. 41. The second is Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modification of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment, Office of the Under Secretary of Defense (Aug. 25, 2017), which addresses PTSD and TBI as conditions warranting liberal consideration of the veteran's evidence in such proceedings. Am. Compl. 36-40. The third is Consideration of Discharge Upgrade Requests Pursuant to Supplemental Guidance to Military Boards for Correction of Military/Naval Records (BCMRs/BCNR) by Veterans Claiming Post Traumatic Stress Disorder (PTSD) or Traumatic Brain Injury (TBI), Principal Deputy Under Secretary of Defense (Feb. 24, 2016), which instructs boards for correction of military records to waive statutes of limitation in appropriate cases. Am. Compl. at 8.

None of these statements of Defense Department policies and instructions waives or otherwise affects this court's statute of limitations.  See, e.g., John R. Sand & Gravel Co., 552 U.S. at 133-35 (holding that the government may not waive the six-year limitations period); Martinez, 333 F.3d at 1312-13 (explaining that even if a service branch provides an ancillary method for a service member to obtain relief through a corrections board, the service member's monetary claim before this court, as a general rule, retains the claim's original accrual date and is subject to this court's six-year statute of limitations (citing Hurick v. Lehman, 782 F.2d 984, 984 (Fed. Cir. 1986))).  The court is bound by these precedential decisions issued by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, just as it is bound by 28 U.S.C. § 2501.  Because Mr. Jones's disability retirement claim is time-barred, it must be dismissed.

### III.  CONCLUSION

Mr. Jones asks this court to review what he believes were errors in his discharge in 1988 and errors in the AFBCMR's decision rendered in 2020.  Although it has great respect for Mr. Jones's service to the United States and sympathy for Mr. Jones's health situation, the court is powerless to reach the merits of Mr. Jones's claim because that claim is barred by the statute of limitations.

Consequently, the court **GRANTS** defendant's motion and **DISMISSES** plaintiff's amended complaint for lack of jurisdiction.  No costs.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge